IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA M. GOYCO, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CAROLYN COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 13 C 6328 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Lisa Goyco has appealed the decision of the Social Security Administration (SSA) to deny her applications for Supplemental Security Income benefits and Social Security Disability benefits. An administrative law judge (ALJ) determined that Goyco was not disabled pursuant to the definition set forth in the Social Security Act. Both Goyco and the Acting Commissioner of Social Security have moved for summary judgment. For the reasons set forth below, the Court grants the Commissioner's motion and affirms the denial of benefits.

### Background

Goyco is a thirty-two year old woman with a high school education. R. 45. Her past relevant work was as a sales clerk, an admissions advisor, a phone salesperson, and a general office clerk. R. 97-98. Goyco filed an application for Social Security Disability benefits on August 11, 2010, alleging she had been disabled since January 25, 2008. R. 250. Goyco alleges that back and neck pain, as well as mental health

issues, render her disabled. She also applied for Supplemental Security Income benefits on August 18, 2011. R. 293. On June 15, 2012, the ALJ found that Goyco was not disabled. R. 13-32.

1. **Physical health**

Goyco was injured in two motor vehicle accidents on January 25, 2008 and May 12, 2008. R. 461, 409. She visited Erie Family Health Center complaining of back pain on July 25, 2008 and was prescribed medication. R. 501-02. A MRI of her lumbar spine on June 26, 2008 revealed a herniated disc with no evidence of nerve root impingement and no focal deficits. R. 919-20. Goyco returned to Erie Family Health Center complaining of back pain on October 21, 2008, and May 19, 2009. R. 498, 495.

Goyco received chiropractic treatment for her back pain from February 6, 2008 to December 8, 2008. R. 851. The chiropractor noted that Goyco had reached maximum medical improvement with her lower back by July 1, 2008, R. 409, and maximum medical improvement for her neck injury by December 8, 2008.

On July 16, 2010, a lumbar MRI revealed mild degenerative changes with degenerative disc desiccation, a mild disc bulge, and a right annular tear. R. 486. Goyco received an injection of Kenalog (a corticosteroid) in her back to treat her lower back pain on November 23, 2010. R. 541. Goyco saw a certified physician assistant, Pat Maier, on February 11, 2011, again complaining of back pain. R. 580, 1040. Maier diagnosed her with lower back pain and sciatica with numbness in the lower back. R. 580. On December 10, 2011, Goyco returned to Maier, who noted that Goyco was alternating between standing and sitting and stretching her back. R. 1040.

On October 16, 2010, Dr. ChukwuEmeka Ezike examined Goyco at request of the SSA. R. 503-07. Dr. Ezike reviewed the disability report from the SSA, medical records from Erie Family Health Center, and the lumbar MRI report from July 16, 2010, and he also examined Goyco. R. 503. He observed a full range of motion and mild paralumbar tenderness. R. 505. Dr. Ezike diagnosed Goyco with lumbar degenerative disc disease. R. 505.

Dr. Laura Rosch, an internist, testified at the hearing before the ALJ. Dr. Rosch had not examined Goyco; she based her opinion of Goyco's disability on a review of Goyco's medical records. R. 80. Dr. Rosch testified that Goyco has longstanding chronic back pain with a herniated disc and an annular tear at L5-S1. R. 81, 84. She estimated that Goyco could lift 20 pounds occasionally and 10 pounds frequently, stand or walk for only four hours per eight-hour work day, and sit for six hours per work day. R. 86. Dr. Rosch stated that Goyco would require breaks every two hours, could never use ladders, ropes, or scaffolding, could occasionally stoop, and should not work around heavy machinery or unprotected heights. R. 86-87.

Goyco testified at the hearing that she has constant pain in her low back that increases when she stands or sits for more than 20 to 30 minutes and causes shooting pain and a burning sensation in her legs. R. 58, 64. She also stated that some of her medications cause inability to use the bathroom, drowsiness, and "mind rushes." R. 62, 65. Goyco testified that she drives every day, goes out to eat, takes care of three children, shops for groceries, cooks, and vacuums. R. 47-51. She attempted to work as a cashier part-time, but she stated that she was unable to focus due to her back pain. R. 56.

**2. Mental health**

At the hearing, which was held in April 2012, Goyco testified that she had gone to the emergency room following a panic attack a bit more than a year before the hearing. Since that time, she stated, she had experienced panic attacks "[a]lmost every day." R. 68. She stated that therapy had helped with this.

Goyco started seeing psychiatrist Dr. Carlos Nunez on January 26, 2011. This was the first occasion on which she sought treatment for mental health issues. Goyco began seeing Dr. Nunez for a monthly psychiatry appointment and attending counseling biweekly. R. 588. She told Dr. Nunez that she was struggling with decreased appetite, decreased sleep, low energy, loss of interest in pleasurable activities, poor concentration, low self-esteem, memory impairment, hopelessness and a depressed mood. R. 594. Dr. Nunez diagnosed Goyco with moderate depression, generalized anxiety disorder, and post-traumatic stress disorder. R. 597. Dr. Nunez assigned Goyco a global assessment of functioning (GAF) score of 45 and prescribed sertraline, an antidepressant. R. 597.

At Goyco's request, Dr. Nunez provided opinions in March 2011, July 2011, August 2011, and March 2012 that were submitted as part of the disability adjudication process. R. 588, 807, 841, 998. In his March 2011 opinion, Dr. Nunez reported that Goyco has serious limitations on her work-related functioning because she cannot concentrate, is slow to respond, and becomes irritated easily. R. 590. In his July 2011 report, Dr. Nunez said that Goyco has mild restrictions in the ability to make judgments on simple work-related decisions and responding to usual work situations and changes in the routine work setting. R. 807-08. He reported she had moderate restrictions in her

4

ability to understand and remember complex instructions, carry out complex instructions, and her ability to make judgments on complex work-related decisions.

In Dr. Nunez's August 2011 report, he stated that Goyco's ability to respond to usual work situations had worsened and that she was markedly limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods and had limited ability to perform activities within a schedule and maintain regular attendance. Dr. Nunez also noted that Goyco was markedly limited in her ability to complete a normal work week without interruptions from psychologically based symptoms. R. 844-45. Dr. Nunez assigned Goyco a GAF score of 55-60. The Court notes that this was higher than the score he had assigned following his first assessment. R. 841.

In Dr. Nunez's March 2012 report, he stated, among other things, that Goyco was markedly limited in her ability to remember locations and work-like procedures, markedly limited in her ability to understand and remember detailed instructions, markedly limited in her ability to carry out detailed instructions, to maintain attention and concentration for long periods of time, markedly limited in her ability to perform activities within a schedule and maintain regular attention, and markedly limited in her ability to work in coordination with or proximity to others without being distracted by them. R. 1002. He assigned her a GAF score of 50. R. 998.

Dr. Nunez's clinic notes from March 2011-March 2012 do not reflect, however, that Goyco's condition had been worsening. On July 19, 2011, he noted that Goyco was feeling "relieved"; on August 16, 2011, she was feeling "the same"; and on August 25, 2011, she was "improving, though symptomatic." R. 821-22.

### 3. Vocational expert's testimony

Ronald Malik testified as a vocational expert. Malik testified that a person of Goyco's age, education, and work history and with her limitations would be unable to perform any of Goyco's past work. R. 101-02. Malik testified, however, that such a person could work as a document prep clerk, a finisher, or a trimmer. R. 102. Malik further testified that an additional restriction of only occasional contact with others would not preclude this type of work, but if the person were further limited to only occasional, brief, and superficial contact with coworkers, supervisors, and the general public, there would be no work available. R. 103.

### 4. Decision of the ALJ

On June 12, 2011, the ALJ denied Goyco's claim for disability and SSI benefits. R. 16. The ALJ found that Goyco was not engaging in substantial gainful activity. R. 18. The ALJ next concluded that Goyco suffers from a herniated disc, an annular tear, lower back pain, moderate major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder, and that these impairments, "considered both individually and in combination," are severe. R. 18-19. The ALJ found, however, that Goyco does not have an impairment or a combination of impairments that meets or medically equals the severity of a listed impairment. R. 19.

The ALJ next concluded that Goyco retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that she could stand or walk for a total of four hours in an eight-hour work day, could sit for a total of six hours in an eight-hour work day, could never climb ladders, ropes, or scaffolds, could only occasionally stoop, and should not work in proximity to

dangerous moving machinery or unprotected heights. The ALJ concluded that Goyco could perform work consisting of simple, routine, repetitive tasks with simple instructions and occasional routine, simple work-related decisions and no more than occasional workplace changes, without fast-paced work or requiring a production-rate pace as on an assembly line, and she could have only occasional contact with coworkers, supervisors, and the general public. R. 21. In making the RFC determination, the ALJ gave less weight to the opinions of Goyco's treating psychiatrist, Dr. Nunez. R. 24. The ALJ also found that Goyco was not fully credible and gave less weight to her testimony. R. 24.

In light of the RFC finding, the ALJ concluded that Goyco could not perform any of her past work. The ALJ found, however, that there are jobs in significant numbers in the economy that Goyco could perform. R. 25. The ALJ therefore denied Goyco's claim.

## Discussion

When, as in this case, the SSA's Appeals Council denies review of the ALJ's decision, that decision constitutes the final decision of the Commissioner. *Schmidt v. Astrue,* 496 F.3d 833, 841 (7th Cir. 2007). The Court will affirm the ALJ's ruling "if it is supported by substantial evidence and free of legal error." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, even "[i]f reasonable minds can differ over whether the applicant is

disabled, [the Court] must uphold the decision under review." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

This Court will not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the Court looks to whether the ALJ "buil[t] an accurate and logical bridge from the evidence to her conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001).

Goyco raises two issues on appeal. First, she argues that the ALJ gave too little weight to her treating physician, Dr. Nunez, when making his disability determination. Second, Goyco challenges the ALJ's determination that she was not credible. The Court will address both issues below.

1. **The ALJ's consideration of Dr. Nunez's opinion**

Goyco first argues that the ALJ should have deferred to Dr. Nunez's opinion that her mental state rendered her unable to work. Social Security regulations require an ALJ to give a treating physician's opinion controlling weight if it is supported by medical findings and consistent with substantial evidence in the record. *See, e.g., Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). But "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Reynolds v. Bowen*, 844 F.2d 451, 455 (7th Cir. 1988). An ALJ may discount a treating physician's opinion if it "inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). *See also*

8

*Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. 2013). The ALJ gave two reasons for discounting the opinion of Dr. Nunez, both of which Goyco argues were erroneous.

First, the ALJ stated that although Dr. Nunez's opinions dated March 2011, July 2011, August 2011, and March 2012 suggested that Goyco's condition was worsening, his treatment records did not support that conclusion and in fact pointed in the opposite direction. R. 24. Specifically, although Dr. Nunez opined that Goyco's condition had increased to markedly limited in several areas, his treatment notes indicated that Goyco was feeling "the same" on some of these dates and "relieved" on others. R. 24. Inconsistency between a treating physician's disability determination and that physician's treatment notes is an adequate reason to discount the physician's opinion. *See Ketelboeter,* 550 F.3d at 625; *see also Schmidt,* 496 F.3d at 842; *Skarbek*, 390 F.3d at 504; *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995).

In *Schmidt v. Astrue*, the Seventh Circuit upheld an ALJ's decision to give less weight to the treating physician's opinion under circumstances similar to this case. The ALJ noted in *Schmidt* that the doctor's treatment notes reflected a benign physical examination and recorded on several occasions that the claimant's condition was "good" and "pretty good." *Schmidt*, 486 F.3d at 842. The ALJ found that the notes were inconsistent with the doctor's conclusion that the claimant could not perform sedentary work, and the court agreed. *Id.*

The inconsistencies in *Schmidt* are similar to the inconsistences between Dr. Nunez's treatment notes and the opinions he submitted for purposes of the disability determination. These inconsistences provided a sufficient basis for the ALJ to discount his opinion. The Court concludes that the ALJ's decision not to accord controlling

9

weight to Dr. Nunez was reasonable because of the internal inconsistencies and that the ALJ sufficiently explained his reasoning.

Second, the ALJ suggested that Dr. Nunez's opinions regarding Goyco's disability might have reflected a sympathetic response to his patient. R. 24. "A treating physician's opinion is important because that doctor has been able to observe the claimant over a period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.'" *Ketelboeter*, 550 F.3d at 625 (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)). That said, an ALJ's mere conjecture of a sympathetic response is not an acceptable basis for ignoring the treating physician's views. *Moss v. Astrue,* 555 F.3d 556, 560 (7th Cir. 2009). The ALJ must have a substantial evidentiary basis for finding a bias by the treating physician, and "an otherwise medically valid opinion will not be ignored merely because of speculation that the physician was sympathetic to the claimant." *Id.*

In this case, the claim of a sympathetic response amounted to unsupported speculation. The ALJ relied on the fact that Goyco repeatedly gave Dr. Nunez documentation from her lawyer to fill out for the disability application. R. 24. That does not suggest sympathy or bias on Dr. Nunez's part. It is common for physicians to provide reports of their treatment and their patients' condition to other physicians, for purposes of the patient's employment, to insurers, and otherwise. The fact that Goyco got the forms from her lawyer—who was prosecuting a claim on her behalf and needed a report from her treating physician—does not suggest any bias or sympathetic reaction on the physician's part. As the Ninth Circuit has stated, "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an

10

opinion is provided, is not a legitimate basis for evaluating the reliability of the report."
*Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir. 1998).

The ALJ also found relevant that a social worker in the same clinic where Dr. Nunez worked referred Goyco for legal assistance with her disability application. *Id.* So what? Referring clients to sources of assistance is what social workers do; the fact that Dr. Nunez worked in the same clinic as the social worker does not suggest any bias or sympathetic reaction on *the physician's* part.

The Court's disagreement with the ALJ's statement in this regard does not, however, undermine the viability of the ALJ's discounting of Dr. Nunez's opinion that Goyco was disabled. It is apparent from this particular statement by the ALJ that he was simply hypothesizing reasons why the physician's conclusions did not square with his treatment notes. The existence or non-existence of a motive on Dr. Nunez's part does not alter the fact that the records of his treatment do not support the opinions he rendered that Goyco was disabled. The latter determination by the ALJ, which is properly supported by the record and by the ALJ's reasoning, is sufficient despite the Court's disagreement with the ALJ that Dr. Nunez was motivated by sympathy for his patient.

The Court concludes that the ALJ did not err in discounting Dr. Nunez's opinions.

**2.   The ALJ's credibility assessment of Goyco**

The ALJ found that Goyco's testimony regarding the severity of her pain and the limitations that it imposes on her was not credible. He found that Goyco's testimony regarding the severity of her symptoms and the extent of her limitations was not supported by objective medical findings from the multiple MRIs and Dr. Rosch's opinion.

11

R. 24. The ALJ also found that Goyco's testimony regarding her daily activities indicated less-severe limitations than she claimed in her testimony. *Id.* The ALJ also noted that the record indicates no more than minimal treatment for her allegedly disabling back impairment after 2008, despite a claimed disability onset date of January 25, 2008. R. 23.

"An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is patently wrong." *Skarbek*, 390 F.3d at 504. The Seventh Circuit has characterized this standard as "extremely deferential," *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013), and it has said that a claimant seeking to overturn an adverse credibility determination has is a "high burden." *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). A court will defer to the ALJ's "credibility determination as long as the ALJ gives specific reasons that are supported in the record for his finding." *Skarbek*, 390 F.3d at 505.

The ALJ's reference to Goyco's daily activities does not provide proper support for his determination that her testimony regarding her pain and her physical limitations was not credible. The ALJ noted that Goyco testified that she performed household chores, prepared light meals, handled parental care issues, drove a car, and shopped. R. 19. Applicable regulations permit consideration of a claimant's daily activities in looking at relevant issues, including as the claimant's level of pain. *See* 20 C.F.R. § 416.929(c)(3)(i). But as the Seventh Circuit has stated,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The

12

> failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson,* 671 F.3d 640, 647 (7th Cir. 2012). In another recent case, the Seventh Circuit called it "naiveté" for an ALJ to "equat[e] household chores to employment" and to "attach[ ] great weight to the applicant's ability to do laundry, take public transportation, and shop for groceries" in determining the applicant's credibility. *Hughes v. Astrue,* 705 F.3d 276, 278 (7th Cir.2013). The court noted that any claimant has to perform some basic activities, such as doing laundry and buying groceries, unless she can hire someone to do it for her, *id.* at 279, which would be financially impossible for the average Social Security claimant. What is critical in this case, however, is that the ALJ does not appear to have taken into account "how [the claimant] carried out those activities," which "should be considered in the RFC assessment." *Craft v. Astrue,* 539 F.3d 668, 680 (7th Cir. 2008). Instead of doing this, the ALJ simply made reference to Goyco's testimony about her daily activities and said it was inconsistent with her claims of pain and limitations, without providing any explanation for why this was so.

By contrast, the ALJ's consideration of the inconsistency between Goyco's testimony about her pain and the testimony of Dr. Rosch, as well as the absence of significant treatment for Goyco's symptoms after 2008, provided more solid support for the ALJ's rejection of her testimony on these points. Specifically, the ALJ noted that despite Goyco's testimony about disabling back pain, the record reflected that she did not seek significant treatment for this condition at the relevant times. R. 23. Goyco says that the onset of her disability was January 25, 2008. Yet as the ALJ noted, the record reflects only minimal treatment for her back pain after 2008. The type of

treatment that a claimant received is an appropriate factor for the ALJ to consider when making a credibility assessment. *Shideler v. Astrue,* 688 F.3d 306, 313 (7th Cir. 2012). This factor supported the ALJ's decision to discount Goyco's testimony regarding her back pain.

Goyco also objected to the ALJ's use of boilerplate language. Specifically, the ALJ stated that Goyco's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but he found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 22. This language was, in fact, standard boilerplate used in disability determinations by Social Security Administration ALJs. But in contrast to cases in which the use of this or similar boilerplate was a basis for reversal, the ALJ in Goyco's case gave specific reasons why he did not give full credit to Goyco's testimony. The ALJ did not refer back to his own RFC determination but rather cited specific facts in the record. Thus, although "the use of boilerplate [is] inadequate, by itself, to support a credibility finding," *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012), there was more than just the boilerplate conclusion in this case. When, as in this case, an ALJ provides sufficient reasoning and adequately builds a bridge from the evidence to his conclusions, the use of boilerplate is not a basis for reversal.

**Conclusion**

For the reasons stated above, the Court concludes that the Commissioner's decision was supported by substantial evidence. The Court grants the Commissioner's motion for summary judgment [docket no. 19] and denies Goyco's cross motion for

14

summary judgment [docket no. 14]. The Court directs the Clerk to enter judgment affirming the decision of the Commissioner of Social Security.

_____

Date: October 14, 2014